**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA,

v.

EMMANUEL GUOBADIA,
               Defendant.

**REPORT AND**
**RECOMMENDATION**
16-CR-6036-EAW-JWF

## Background

On April 28, 2016, a Federal Grand Jury in the Western District of New York returned an eight count Indictment, charging Emmanuel Guobadia ("Guobadia" or "the defendant") with four counts of wire fraud in violation of 18 U.S.C. § 1343 and four counts of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). Indictment (Docket # 6). In January 2018, the defendant, represented by counsel, filed his omnibus motions (Docket # 46), most of which the Court resolved at oral argument on March 2, 2018. See Docket # 55. However, the Court reserved decision as to the defendant's motion to suppress statements and evidence related to search warrants and post-arrest statements allegedly made by the defendant in October 2013 and April 2016. Through counsel, the defendant filed a supplemental motion regarding these suppression issues on February 28, 2018. Docket # 53. A suppression hearing was scheduled for April 26, 2018.

However, on March 23, 2018, Guobadia sought to discharge his court-appointed counsel and represent himself. Docket # 57. After engaging Guobadia in the required colloquy, the Court granted the defendant's request.[1] The Court did not adjourn the suppression hearing and it proceeded as scheduled on April 26. Two law enforcement witnesses testified at the hearing – Detective N. Deaton ("Deaton") from the Clayton County Georgia Police Department and United States Secret Service Special Agent Samuel Messinger ("Messinger"). The defendant filed a post-hearing brief on May 7, 2018 (Docket # 60), and the government filed its post-hearing brief on May 15, 2018 (Docket # 62). The Court notified the parties that its advisement period would commence upon the filing of the transcripts of the suppression hearing. The hearing transcripts were filed on July 26, 2018. See Apr. 26, 2018 Hr'g Tr., Docket # 69 ("Tr."). For the reasons set forth below, it is my Report and Recommendation that the defendant's motions to suppress (Docket ## 46, 53) be **denied.**

---

[1] The Court has appointed the defendant three different lawyers. Upon arrest, the defendant was represented by Assistant Federal Public Defender Anne Burger. After the defendant alleged a conflict had arisen between himself and his lawyer, the Court relieved the Federal Defenders Office and appointed CJA Attorney James Riotto, Esq. Thereafter, the defendant claimed that a conflict had arisen between him and Mr. Riotto and the Court relieved Mr. Riotto and appointed another CJA lawyer, John Getz, Esq., to represent the defendant. Mr. Getz filed motions on behalf of the defendant. Again, however, the defendant expressed dissatisfaction with his court-appointed counsel. The Court indicated it was not necessarily inclined to appoint a fourth lawyer for the defendant and Guobadia elected to represent himself.

## Discussion

The suppression issues raised by the defendant relate to (1) search warrants executed in October 2013 and (2) statements Guobadia made to law enforcement after he was taken into custody in October 2013 and April 2016.  First, Guobadia argues that the search warrants themselves were defective and those defects tainted any evidence obtained as a result of the warrants.  Second, the defendant claims he never waived his Miranda rights when he made post-arrest statements to law enforcement.  For the reasons explained below, the defendant's arguments are without merit and accordingly I recommend that his motions be denied.

October 2013 Search Warrants:    On October 15, 2013, law enforcement in Clayton County, Georgia obtained a warrant to search Room 311 of the Sundown Suites in Jonesboro,[2] where Guobadia had rented a room.  The defendant claims that all evidence seized from Room 311 must be suppressed because that room, for which the warrant was sought and executed, was not registered to him.

Whether or not Room 311 was registered to the defendant is not dispositive of the legality of the warrant that was obtained. The issue before the Court is whether the warrant that was issued was supported by probable cause to search Room 311.  United States

---

[2] On October 11, 2013, prior to seeking the October 15 warrant, law enforcement obtained a search warrant for Room 334 of the America's Best Value Inn & Suites.  See Pl.'s Suppl. Br., Docket # 60, at 12.  That warrant was never executed.

3

v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) ("[T]he duty of a court reviewing the validity of a search warrant is 'simply to ensure that the magistrate had a substantial basis for . . . conclud[ing]' that probable cause existed.") (internal quotation marks omitted) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

The search warrant application for Room 311 was sworn to by Detective Deaton and informed the issuing judge that Guobadia's wife had been arrested on October 15, 2013 for attempting to use a fraudulent credit card. A subsequent post-arrest search revealed 17 fraudulent credit cards in her possession and she was taken to the Fayette County Jail. Def.'s Suppl. Mot., Ex. E, Docket # 53-6, at 3. Thereafter, a local taxi driver, Muhamed Adamson ("Adamson") brought Guobadia to visit his wife in jail. Id. While Guobadia was visiting his wife, the taxi driver went to the local police department station and reported that Guobadia was involved in fraudulent credit card activities. Id. Adamson told the police that, after Guobadia's wife was arrested, Guobadia immediately moved into Room 334 at the America's Best Value Inn & Suites. Id. Adamson stated that he helped Guobadia move equipment for producing fraudulent credit cards into Room 334. Id. at 3-4. Adamson advised police that later that same day Guobadia, and all of his equipment had been moved again, this time to Room 311 at the Sundown Suites. Id.

4

Contrary to Guobadia's arguments (Def.'s Mot. to Suppress, Docket # 46, at ¶ 34), the affidavit outlined above establishes probable cause to search Room 311.  The supporting affidavit for the search warrant was based on first-hand information provided by a taxi driver who had personally interacted with the defendant, had helped him move equipment used to produce fraudulent credit cards to Room 334 and thereafter informed police that Guobadia had moved again, this time to Room 311, the location of the search. These observations, given to law enforcement by a known source, reasonably suggest the existence of a "fair probability" that evidence of a crime would be found in Room 311.  Florida. v. Harris, 568 U.S. 237, 244 (2013).   That the defendant claims he was registered to a different room is beside the point.  Indeed, if Guobadia was not registered to Room 311, as he now claims,[3] he may not have had an expectation of privacy in that room.  See United States v. Cody, 434 F. Supp. 2d 157, 166-67 (S.D.N.Y. 2006)(finding that guest not registered to room did not have an expectation of privacy in that room and therefore did not have

---

[3] The Court notes that Guobadia's recent assertion as to occupancy is inconsistent with his previous representations and the hearing evidence. Testimony adduced at the hearing establishes that as of October 9, Room 311 had been registered to Guobadia. And, the subsequent search confirms that Guobadia was in fact found in Room 311.  Moreover, in a sworn affidavit intended to establish Guobadia's subjective expectation of privacy in Room 311, the defendant stated: "On October 16, 2013, I was a registered guest in a hotel room located at 6811 North Main Street in Jonesboro, Georgia.  It was room number 311."  Docket # 46-1, at ¶ 2. (The reference to 6811 North Main Street appears to be a typographical error because the motel was located at 7811 Main Street.)  Similarly, in moving papers, defense counsel stated that "Motel room 311 was registered in Mr. Guobadia's name."  Docket # 46, at ¶ 18.

5

standing to challenge a search of the room).  And, if he does not have such an expectation of privacy, he would not have standing to challenge the search.  See United States v. Haqq, 278 F.3d 44, 47 (2d Cir. 2002) ("The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, 'a defendant must demonstrate that he personally has an expectation of privacy in the place searched.") (emphasis in original) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)).  For these reasons, the defendant's argument that all evidence seized from Room 311 must be suppressed on this ground is without legal or factual merit.

The defendant's remaining arguments regarding the October 2013 search warrants are also without merit.  He repeatedly identifies what he believes are factual inaccuracies in the warrant application for the search of his motel room and the police documents produced after that search.  Pursuant to Franks v. Delaware, 438 U.S. 154, 164-72 (1978), the defendant bears the burden on "demonstrating that the misrepresentations or omissions in the search warrant affidavits were 'the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" United States v. Lahey, 967 F. Supp. 2d 698, 709 (S.D.N.Y. 2013) (quoting United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000)).  He must also establish that the "alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity

6

finding." United States v. Rajaratnam, 719 F.3d 139, 146 (2d Cir. 2013) (quoting Canfield, 212 F.3d at 717-18). Guobadia has done neither.

For example, he insists that an informant the police called "Mr. Adamson" in their affidavit in support of the search warrant was actually "Mr. Dawson," and that this person lied. Docket # 60, at 5-6. He also claims that Deaton's signature on the October 15, 2013 warrant application (Docket # 60, Ex. E, at 13) does not match his signature on other documents (id. at 11, 18), and that the issuing judge's signature on the October 15, 2013 warrant (id. at 13) does not match the judge's signature elsewhere (id. at 12, 15). Finally, he says that, contrary to post-search inventory documents, there were no credit cards found in his motel room; rather there were 41 prepaid cards and those, along with some equipment, were omitted from the "evidence submission" form. Docket # 60, at 6.

Guobadia has not elicited or provided any admissible evidence suggesting, much less demonstrating, that the search warrants were infected by improper conduct or forged signatures. His speculation on these issues is not enough to constitute deliberate misconduct,[4] let alone that there was any error material to a probable cause

---

[4] The defendant also asserts that certain electronic devices were seized and searched prior to obtaining a warrant on December 2, 2013. Docket # 60, at 10. Again, Guobadia provides absolutely no factual basis for this claim. See United States v. Miller, 382 F. Supp. 2d 350, 361 (N.D.N.Y. 2005) ("As the party seeking to suppress, the defendant has the burden of production.").

finding.  Accordingly, his arguments with respect to the October 2013 warrants and applications fall well short of meeting the standard for suppression or suggesting the need for a further evidentiary hearing.  United States v. Pettway, No. 16-CR-76(LJV), 2017 WL 3301399, at *1 (W.D.N.Y. Aug. 3, 2017) (where defendant "had made no offer of proof to support the defendant's conclusory allegations of falsity and reckless disregard for the truth," there was no basis for court to suppress evidence or to convene a Franks hearing).

October 16, 2013 Statements:  The defendant contends that on October 16, 2013, after being arrested at his motel room and before he was interviewed by law enforcement, he was provided with a written statement of his Miranda rights and "initialed the statement of Miranda rights but he did not sign the waiver." Docket # 53-1, at ¶ 6; Hr'g Ex. 2.  Guobadia maintains that he does not remember signing the document and insists that the signature that appears on the Miranda waiver is not his.  Docket # 53-1, at ¶ 6; Tr. at 16.  Importantly, Guobadia does not argue that law enforcement failed to administer his Miranda rights. Rather, he claims that he never waived them because he did not sign the waiver form.

The defendant's argument is not persuasive.  There is no requirement of a signed Miranda waiver to effectuate a valid waiver

of rights.[5]  Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) ("The prosecution therefore does not need to show that a waiver of Miranda rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence."). All that is required is that the Miranda warnings be given – which is not contested here - and that a defendant makes a voluntary, intelligent, and knowing waiver of those rights. United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) ("To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right.").  "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Berghuis, 560 U.S. at 384.  This is so because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made

---

[5] I have reviewed the video tape of Guobadia being presented with the Miranda waiver statement and Guobadia very clearly signs some portion of the document. Even if he did not sign the waiver form - an argument belied by the video and documentary evidence - his failure to do so does not constitute an invocation of his Miranda rights. United States v. Plugh, 648 F.3d 118, 125 (2d Cir. 2011) (defendant's "refusal to waive rights, however unequivocal, is not necessarily equivalent to an unambiguous decision to invoke them.") (emphasis in original); United States v. Cushnie, No. 14 CR 119 PGG, 2014 WL 7447149, at *6 (S.D.N.Y. Dec. 31, 2014) ("Cushnie's refusal to sign the Miranda waiver form does not constitute an unambiguous invocation of his Miranda rights.").

a deliberate choice to relinquish the protection those rights afford." Id. at 385.

At the hearing, Deaton credibly testified that he read the defendant his Miranda rights off a standard-issue form (Tr. at 20), the defendant initialed each specific warning (Tr. at 21-22), and then the defendant signed the Miranda warning document, acknowledging that he understood the warnings administered to him (Tr. at 22). Deaton testified – and the video of the interaction (Hr'g Ex. 1) confirmed – that Guobadia was not coerced or threatened in any way to sign the document waiving his Miranda rights. Guobadia did not present any evidence that he did not sign the Miranda form waiving his rights; he merely states that he does not remember what he did or what he may have signed. Tr. at 6. This is insufficient to overcome Deaton's testimony and the video evidence in the record.

Moreover, assuming for the sake of argument that Guobadia did not sign the Miranda warning form, Guobadia nevertheless waived his Miranda rights through his course of conduct. The record evidence demonstrated that Guobadia understood his rights and wanted to speak with law enforcement. Indeed, he answered law enforcement's questions and never asked for the questioning to cease. By agreeing to speak with law enforcement and answering their questions without ever asking to stop, he implicitly waived his right to remain silent. See Plugh, 648 F.3d at 128 ("[W]e

10

conclude that the government carried its burden of establishing that Plugh knowingly and voluntarily waived his rights by (1) signing a waiver-of-rights form [after he gave the statement], and (2) otherwise engaging, after being informed of those rights on two separate occasions, in a course of conduct inconsistent with their exercise.").

The defendant's remaining argument is that the police asked him one or two questions before they advised him of his Miranda rights. Upon reviewing the video, I can discern only two "questions": "I'm going to take these handcuffs off, okay?" and "Before I ask you any questions, I'd like to read you your rights, okay?" Both "questions" are actually more akin to statements and neither elicited a response from Guobadia. Moreover, the government is not seeking to introduce any pre-Miranda response at trial. Consequently, there is no Fifth Amendment violation.

April 13, 2016 Statements: Guobadia next argues that his statements made to Special Agent Messinger on April 13, 2016, must be suppressed because "the Government cannot prove that the defendant right [sic] was read verbally or provide evidence." Docket # 60, at 2. This is so, the defendant asserts, because the audio recording made during his interview does not include anyone reading him his Miranda rights or any statement by him waiving those rights. Id.

11

The hearing testimony, however, shows that Guobadia waived and never invoked his Miranda rights. Special Agent Messinger testified that he planned to meet the defendant at a local courthouse in Georgia, where the defendant had a previously scheduled and unrelated court appearance. Tr. at 33. After the appearance, Messinger approached Guobadia and asked if he would be willing to answer some questions. Tr. at 33-34. Messinger asked court staff for a room with recording equipment but none was available, so he conducted the interview in a room without built-in audio recording equipment. Tr. at 34-35. He testified that he and his partner provided Guobadia with Miranda warnings using a standard statement of rights form (Hr'g Ex. 3) and read those rights verbatim to Guobadia. Tr. at 35-36. After Messinger completed reading the defendant his rights, the defendant initialed the form, indicating the understood the rights as advised and wished to waive the rights to speak with law enforcement. Tr. at 36-38. The defendant did not appear confused and never requested an attorney. Tr. at 38.

Messinger intended to record the interview using a portable recording device he had with him. Shortly after commencing the interview, Messinger realized he had not started the recording device. Tr. at 39. He then turned on his portable audio recording device but did not re-administer the Miranda warnings. Tr. at 39, 42-43; see Hr'g Ex. 4. After starting the recording device,

12

Messinger asked Guobadia for emergency contact information.  The defendant responded by providing his attorney's name but stated that he did not know the attorney's telephone number.  Hr'g Ex. 3; see Tr. 61-62.  Messinger testified that he did not recall if Guobadia ever requested an attorney during the questioning but had he done so, they would have terminated the interview.  Tr. at 42. Messinger does not believe he asked Guobadia any questions prior to reading his Miranda rights.  Tr. at 52.  Guobadia, on the other hand, claims that he does not remember his rights being read or him signing any form.  Tr. at 60.  He contends that the only reason he was asked for an emergency contact "was to figure out if I had someone that would represent me."  Tr. at 62.

To resolve this aspect of the defendant's motion, the Court must first decide whether Guobadia providing his attorney's name amounted to an invocation of his Fifth Amendment right to counsel and, if not, whether he waived his Fifth Amendment rights by initialing the waiver form and answering law enforcement's questions.

"For a suspect to invoke his Miranda right to counsel, he must at a minimum make 'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation.'" United States v. Oehne, 698 F.3d 119, 122-23 (2d Cir. 2012) (emphasis omitted) (quoting McNeil v. Wisconsin, 501 U.S. 171, 178 (1991)) "'If an

accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her Miranda rights.'" Oehne, 698 F.3d at 123 (quoting Berghuis, 560 U.S. at 381); see also Bush v. Kirkpatrick, No. 06-CV-0771T, 2010 WL 415288, at *4 (W.D.N.Y. Jan. 28, 2010) ("An ambiguous or equivocal reference to an attorney that would cause a reasonable officer only to suspect that the defendant might be invoking the right to counsel does not require the cessation of questioning."). Instead, "the suspect must unambiguously request counsel." Davis v. United States, 512 U.S. 452, 459, 462 (1994).

In Oehne, the Second Circuit found that the defendant did not invoke his Fifth Amendment right to counsel when he told law enforcement officers that he had a lawyer. The Oehne court held that defendant's statement referred to an attorney who was representing him in separate and unrelated charges pending elsewhere. 698 F.3d at 123. Although the defendant "had a Sixth Amendment right to counsel with respect to this unrelated matter . . . the Sixth Amendment right to counsel is 'offense specific,' and its 'effect of invalidating subsequent waivers in police-initiated interviews is also offense specific.'" Id. (quoting McNeil, 501 U.S. at 175). In other words, defendant's mere reference to having an attorney in an unrelated matter was not

14

sufficient to invoke his Fifth Amendment right to counsel with respect to the matter for which he was being questioned.

When analyzed under these well-established Fifth Amendment principles, it is clear that Guobadia's Fifth Amendment right to counsel was never violated because he never invoked it. Guobadia never requested a lawyer, never said that he wanted agents to get him a lawyer or stated that he no longer wished to speak with the agents without a lawyer. He did not ask if he should talk to a lawyer (Davis, 512 U.S. at 462), if he needed a lawyer (Diaz v. Senkowski, 76 F.3d 61, 63 (2d Cir. 1996)), or state that he was going to get a lawyer (United States v. Scarpa, 897 F.2d 63, 68 (2d Cir. 1990)) – all of which courts have found do not demonstrate an invocation of the right to counsel. Rather, Guobadia simply informed the officers that he wanted his attorney listed as his emergency contact. I find that a defendant's identification of his lawyer as his emergency contact is not, in and of itself, sufficient to establish that the defendant unambiguously invoked his Fifth Amendment right to counsel. See Davis, 512 U.S. at 459 ("We decline petitioner's invitation to . . . require law enforcement to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.").

Next, the defendant argues that the government cannot establish that he waived his right to remain silent because there is no video evidence of him signing the waiver form and because he

15

may have never in fact signed the form.   Both arguments are unpersuasive.   As discussed above, a signed rights waiver form is not required to properly waive Miranda rights.   See Berghuis, 560 U.S. at 381; Plugh, 648 F.3d at 128.   Rather, a suspect may waive Miranda rights if, after being properly advised of his rights and failing to invoke them, he freely and voluntarily speaks with law enforcement.   Messinger's testimony makes clear that he advised the defendant of his rights and that the defendant understood those rights and agreed to speak with law enforcement.   A signed waiver form is not a factual prerequisite to a finding of a valid Miranda waiver.   See, e.g., United States v. Smith, 218 F.3d 777, 781 (7th Cir. 2000) ("Indeed, waiver may be inferred from the defendant's conduct, even when she has refused to sign a waiver form.").

Guobadia's remaining arguments criticizing the government for failing to produce video from the courthouse that he insists must exist (Docket # 60, at 2) are also not persuasive.   There is no evidence to suggest any such video actually exists.   Moreover, video evidence confirming the advisement of Miranda warnings is not required for the government to establish that Guobadia was advised of his Miranda rights and properly waived those rights. In sum, I find that the government has met its burden to establish that Guobadia was properly advised of and effectively waived his Miranda rights before making any incriminating custodial statements to law enforcement.

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that the defendant's motions to suppress (Docket ## 46, 53) be denied.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     August 27, 2018
           Rochester, New York

17

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

                        /s/ Jonathan W. Feldman
                        Jonathan W. Feldman
                        United States Magistrate Judge

Dated:     August 27, 2018
           Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).

18