

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

EMMANUEL GUOBADIA,

          Defendant.
_____

**DECISION AND ORDER**

6:16-CR-06036 EAW

## I.    INTRODUCTION

Defendant Emmanuel Guobadia ("Defendant") was found guilty by a jury on June 28, 2019, of all charges in the eight-count Indictment—namely four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and four counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. (Dkt. 194). Defendant elected to represent himself at trial, but upon his request, the attorney appointed as his standby counsel was assigned to represent him for purposes of post-verdict proceedings and sentencing. (Dkt. 204).

On August 8, 2019, Defendant filed a *pro se* motion for post-verdict relief. (Dkt. 203). Although Defendant was no longer proceeding *pro se*, the Court agreed to consider the motion and set a deadline for the Government to respond. (Dkt. 204). The Government filed a response to the motion on August 14, 2019 (Dkt. 205), and Defendant filed a *pro se* reply on September 3, 2019 (Dkt. 207).[1]

---

[1]    To be clear, Defendant is no longer representing himself, but in an exercise of the Court's discretion, it agreed to consider the *pro se* submissions from Defendant. *See United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) ("The decision to grant or deny



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

EMMANUEL GUOBADIA,

          Defendant.
_____

**DECISION AND ORDER**

6:16-CR-06036 EAW

## I.    INTRODUCTION

Defendant Emmanuel Guobadia ("Defendant") was found guilty by a jury on June 28, 2019, of all charges in the eight-count Indictment—namely four counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and four counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. (Dkt. 194). Defendant elected to represent himself at trial, but upon his request, the attorney appointed as his standby counsel was assigned to represent him for purposes of post-verdict proceedings and sentencing. (Dkt. 204).

On August 8, 2019, Defendant filed a *pro se* motion for post-verdict relief. (Dkt. 203). Although Defendant was no longer proceeding *pro se*, the Court agreed to consider the motion and set a deadline for the Government to respond. (Dkt. 204). The Government filed a response to the motion on August 14, 2019 (Dkt. 205), and Defendant filed a *pro se* reply on September 3, 2019 (Dkt. 207).[1]

---

[1]    To be clear, Defendant is no longer representing himself, but in an exercise of the Court's discretion, it agreed to consider the *pro se* submissions from Defendant. *See United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) ("The decision to grant or deny

For the reasons set forth below, Defendant's motion (Dkt. 203) is denied.

## II. <u>LEGAL STANDARD</u>

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). The standard on a motion for a judgment of acquittal is stringent, and a defendant claiming that he was convicted based on insufficient evidence "bears a very heavy burden." *United States v. Blackwood*, 366 F. App'x 207, 209 (2d Cir. 2010) (quoting *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002)). "In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Accordingly, "[a]ll permissible inferences must be drawn in the government's favor." *Id.*

"If any rational trier of fact could have found the essential elements of the crime, the conviction must stand." *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991) (quotation and citation omitted). "The test is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." *Id.* (quotation and citation omitted). The evidence must be viewed "in its totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (quotation and citation omitted), "as each fact may gain color from others,"

---

'hybrid representation' lies solely within the discretion of the trial court."); *United States v. Graham*, 682 F. Supp. 2d 286, 287-88 (W.D.N.Y. 2010) ("[a]lthough criminal defendants possess both the right to appear *pro se* and to appointed counsel, ordinarily those rights cannot both be exercised at the same time").

*Guadagna*, 183 F.3d at 130. The Court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (quotation and citation omitted).

A district court must be careful not to usurp the role of the jury. "Rule 29(c) does not provide the trial court with an opportunity to 'substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Id.* at 129 (alteration in original) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). "A jury's verdict will be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *United States v. Nersesian*, 824 F.2d 1294, 1324 (2d Cir. 1987). The government is not required "to preclude every reasonable hypothesis which is consistent with innocence." *United States v. Chang An-Lo*, 851 F.2d 547, 554 (2d Cir. 1988) (citing *United States v. Fiore*, 821 F.2d 127, 128 (2d Cir. 1987)). Further, "the jury's verdict may be based entirely on circumstantial evidence." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995).

### III. <u>ANALYSIS</u>

#### A. <u>Timeliness of Defendant's Motion</u>

The jury returned its verdict in this case on June 28, 2019, but Defendant did not attempt to file his post-verdict Rule 29 motion until the appearance on August 7, 2019.[2] Therefore, he clearly missed the 14-day deadline set forth in Fed. R. Crim. P. 29(c)(1). At

---

[2] Defendant handed up his post-verdict motion at the appearance on August 7, 2019, and the Clerk's Office filed it the following day. (Dkt. 203; Dkt. 204).

the appearance on August 7, 2019, the Government objected to the receipt of the untimely submission. While the Court agreed to consider the motion, "a court may not grant a postverdict motion for a judgment of acquittal that is untimely under Federal Rule of Criminal Procedure 29(c) *when the prosecutor objects.*" *Eberhart v. United States*, 546 U.S. 12, 18 (2005) (citing *Carlisle v. United States*, 517 U.S. 416 (1996)).[3] Defendant has not offered any justification or excuse for his untimely filing. *See United States v. Dettelis*, No. 03-CR-62A, 2006 WL 8436015, at *2-3 (W.D.N.Y. May 2, 2006) (denying untimely post-verdict motions where government objected and defendant failed to show excusable neglect for failing to comply with deadlines). Accordingly, the motion must be denied on timeliness grounds. However, the Court will also address the substance of the motion.

B. <u>Substance of Defendant's Motion</u>

Defendant's motion essentially challenges the conclusions that the laptop discovered in his hotel room was used by him and that he posed as either "Michael Mandich" or "Barrister Thomas." For the reasons discussed below, there is no merit to Defendant's contentions.

---

[3] Although orally objecting to the receipt of the motion, the Government has not raised a timeliness objection in its written submission. (Dkt. 205). Thus, there may be an argument that the Government waived its timeliness objection. *See Eberhart*, 546 U.S. at 18-19 (clarifying that rules are non-jurisdictional and government's failure to object to untimely submission "entails forfeiture of the objection"); *United States v. Robinson*, 430 F.3d 537, 541 (2d Cir. 2005) (government's failure to object to untimeliness of Rule 33 motion constituted forfeiture of that argument). In any event, because the Court denies the motion on the merits, it need not resolve whether any timeliness objection was forfeited.

1.     The Charges and Instructions

Counts 1 through 4 of the Indictment each charged wire fraud in violation of 18 U.S.C. §§ 1343 and 2. The specific wire transactions that were the subject of each of those counts were the following:

> For Count 1—on June 28, 2012, $8,500 counter credit from Anita Schnautigel's Bank of America account ending in the four digits 2515 to the Defendant's Bank of America account ending in the four digits 2415;
>
> For Count 2—on June 29, 2012, a wire transfer of $8,000 from Ms. Schnautigel's Bank of America account ending in the four digits 2515 to Defendant's Bank of America account ending in the four digits 2415;
>
> For Count 3—on July 6, 2012, a wire transfer of $2,500 from Ms. Schnautigel's Bank of America account ending in the four digits 0960 to Defendant's Bank of America account ending in the four digits 2415; and,
>
> For Count 4—on July 18, 2012, a wire transfer of $9,000 from Ms. Schnautigel's Bank of America account ending in the four digits 0960 to Defendant's Bank of America account ending in the four digits 2415.

(*See* Dkt. 6). The jury was instructed that in order to meet its burden of proof with respect to each one of these counts, the Government must prove each of the following elements beyond a reasonable doubt: (1) there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the Indictment; (2) Defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and (3) in execution of that scheme, Defendant used or caused the use of interstate wires as specified in the Indictment.

Counts 5 through 8 alleged aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 2, in that Defendant possessed, transferred, and/or used without lawful

authority the name and social security number of the following individuals in relation to the wire fraud counts charged in Counts 1 through 4: Steven Haggett (Count 5); Mark Intravia (Count 6); Jack Knudson (Count 7); and Jesse Ralston (Count 8).

The jury was instructed that in order to find Defendant guilty of the charges in Counts 5 through 8, the Government must prove the following elements beyond a reasonable doubt: (1) Defendant knowingly used or transferred or possessed a means of identification of another person; (2) Defendant used the means of identification during and in relation to the offenses charged in Counts 1 through 4; and (3) Defendant acted without lawful authority.

The jury was also instructed about aider and abettor liability pursuant to 18 U.S.C. § 2 since Defendant was charged in each count as both a principal and an aider and abettor.

2. The Evidence

The evidence at trial established that Defendant met Anita Schnautigel through an online dating website. Defendant pretended to be "Michael Mandich" and began a virtual romantic relationship with Ms. Schnautigel (*i.e.* they never met in person). Defendant falsely represented to Ms. Schnautigel that "Michael Mandich" was detained by U.S. law enforcement when returning from a business trip to Nigeria, and at that point Ms. Schnautigel began receiving communications from "Barrister Thomas" who purported to be the attorney for "Michael Mandich." "Barrister Thomas" and "Michael Mandich" convinced Ms. Schnautigel to deplete her life savings in an attempt to free "Michael Mandich." However, Ms. Schnautigel ran out of money in or around May 2012. "Michael Mandich" was still not released from custody. "Barrister Thomas" then convinced Ms.

Schnautigel to open bank accounts and provide him with the account information. Ms. Schnautigel began receiving tax returns/refunds into her various bank accounts located in this District, which at "Barrister Thomas's" direction she transferred by wire transaction to Defendant's bank account in Atlanta, Georgia. Ms. Schnautigel also transferred the tax returns/refunds to an account in the name of Jessie Mitchell, an Atlanta teenager who Defendant manipulated to open a bank account that Defendant controlled.

Law enforcement in Georgia executed a search warrant in October 2013, in a hotel room being used by Defendant. Defendant was the sole occupant of the room, and among other items, law enforcement recovered a laptop computer that contained personal information of thousands of individuals in text files, including individuals who had tax returns filed in their names and deposited into Ms. Schnautigel's bank account. Also included on the laptop were the names of Ms. Schnautigel, Michael Mandich, Barrister Thomas, and Defendant's family members.

At trial, the Government presented testimony from some of the individuals who were the victims of identity theft and who had tax returns filed in their names without their permission. Included among the witnesses were the individuals named as victims in Counts 5 through 8. The Government also presented testimony from Jessie Mitchell who identified Defendant as the individual for whom he opened a bank account and relinquished control, as well as Ms. Schnautigel who never met Defendant (or "Michael Mandich" or "Barrister Thomas") but who described in detail her interactions with these "individuals." The Government also presented forensic evidence and testimony concerning the information uncovered from the laptop seized from Defendant's hotel room.

### 3. Defendant's Contentions

In the face of this overwhelming evidence, Defendant contends that the proof at trial did not establish that he used the laptop discovered in his hotel room. Defendant's argument ignores the forensic evidence introduced at trial plainly linking Defendant to the laptop, as well as the fact that the laptop was found in a hotel room where Defendant was the sole occupant. At trial, Defendant cited to a hairbrush found in the hotel room as proof of his claim that he had been with a prostitute who allegedly left the laptop in the hotel room. Defendant's contention is not only incredible, but the overwhelming forensic proof on the laptop established that it was, in fact, used by Defendant.

Defendant also cites to Ms. Schnautigel's testimony that "Michael Mandich" had a Spanish accent and he argues that "the audio transcript at trial will clearly show that defendant does not have a spanish accent. . . ." (Dkt. 203 at 4).[4] It is true that while Defendant speaks with an accent, it is apparently a Nigerian accent. However, Ms. Schnautigel's description of Defendant's accent is by no means dispositive of whether he posed as "Michael Mandich"—particularly given the overwhelming evidence pointing to Defendant.

Defendant also contends that he was in jail from December 2012 through March 2013, and therefore he could not have possibly served in the role of "Michael Mandich" or

---

[4] There is no audio transcript of the trial. Rather, a court reporter took down the transcript of the trial. However, the certified transcript has not yet been prepared. As a result, the recitation of the evidence herein is based on the Court's recollection and notes, but in the event the transcript differs, it obviously controls.

"Barrister Thomas" while in jail. (Dkt. 203 at 4). First, the Court does not believe that proof was introduced at trial that Defendant was in jail during this time period. Again, no transcript has been prepared so the Court must rely on its recollection of the proof. However, Defendant elected not to testify so he did not put any such proof into evidence. The Court's recollection is that Defendant asked Ms. Schnautigel and Agent Justin Stephen on cross-examination about this topic, but neither witness had any firsthand knowledge of Defendant's custody status during this time period.

Second, even if the evidence at trial established that Defendant was in jail during this time period, that does not mean that he could not have continued the ruse from jail. In addition, it has never been the Government's contention that Defendant was acting alone. Indeed, he likely had others assisting him in perpetrating this fraud. Thus, the Government's case never depended on it proving that Defendant was the person posing as "Michael Mandich" or "Barrister Thomas."

In sum, the trial evidence supported a conclusion that Defendant engaged in a scheme to defraud that caused the wire transfers sent from Ms. Schnautigel's bank account to Defendant's bank account, and that Defendant transferred means of identification belonging to Steven Haggett, Jesse Raltson, Mark Intravia, and Jack Knudson. Each of these individuals testified at trial that they never gave Defendant permission to use their information to file tax returns in their names or receive their tax refunds. The evidence showed that tax returns were electronically filed in their names with the information found on Defendant's computer and that the tax refunds ultimately ended up in Defendant's bank account.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion (Dkt. 203) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 23, 2019
 Rochester, New York